IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

DONNA ARCHAMBEAU,

                            Plaintiff,

            vs.                                    Civil Action No.
                                                   03-CV-159 (NAM/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                            Defendant.

───────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

LEGAL AID SOCIETY FOR                 MARY M. WITHINGTON, ESQ.
NORTHEASTERN NEW YORK
10 Lake Avenue
Saratoga Springs, New York 12866

FOR DEFENDANT:

HON. GLENN T. SUDDABY                 WILLIAM H. PEASE, ESQ.
United States Attorney for the        Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL             BARBARA L. SPIVAK, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                    DENNIS J. CANNING, ESQ.
                                      Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Donna Archambeau, who suffers from various medical conditions including, principally, chronic lower back pain, has commenced this proceeding seeking judicial review of the denial of her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act.  Plaintiff maintains that the denial, which was based upon a finding that although she is incapable of fulfilling the requirements associated with her past employment she retains the functional capacity to perform light work, and thus is not disabled, lacks the support of substantial evidence in the record.  Arguing in favor of reversal, plaintiff maintains that in arriving at this determination the administrative law judge ("ALJ") hearing the matter erred in failing to recognize the severity of the plaintiff's mental condition, improperly discounted her subjective complaints of debilitating pain, failed to consider the limitations associated with her impairments in combination with one another, and committed reversible error in determining plaintiff's residual functional capacity ("RFC") and in relying on the medical-vocational guidelines ("the grid") set

forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2 to find that there are jobs in sufficient numbers within the national economy which plaintiff can perform despite her limitations.

Based upon a thorough review of the record, and considering carefully the arguments advanced by the parties, I find that the Commissioner's determination of no disability stems from the application of proper legal principles, and is adequately supported by substantial evidence in the record.  I therefore recommend that the agency's determination of no disability be affirmed, and plaintiff's complaint in this action be dismissed.

I.     BACKGROUND

Plaintiff was born on July 3, 1950; at the time of the administrative hearing in this matter, she was forty-eight years of age.  Administrative Transcript at pp. 57, 368.[1]  The plaintiff is married, and has two children, both of whom are now over the age of eighteen.  AT 368-69.  Ms. Archambeau is a high school graduate.  AT 370.

Plaintiff was last employed in 1991 in the field of home health services.  AT 370-71.  In that position, Ms. Archambeau transported

---

[1]     Portions of the Administrative Transcript (Dkt. No. 5), which was filed by the Commissioner with the agency's answer, will be cited as "AT ___."

patients, cooked for them, and did their household cleaning.  AT 371.

Before that, plaintiff worked full-time as a cafeteria steward; her duties in

that position included cleaning the cafeteria, setting up food for the

employees, and cleaning up after them.  AT 372.  Plaintiff testified that on

a typical work day the position involved moderate lifting throughout the

day, and heavy lifting about twice a day.  AT 372-74.

Plaintiff has experienced chronic lower back pain beginning with the

birth of her youngest son in 1981, and described by her as becoming

more debilitating over the past several years.  AT 151.  Plaintiff attributes

being taken out of her position as a home health aide in December 1990

and her inability to return to functional work since then to her back pain.

*Id.*  Plaintiff sought treatment for her back condition from David G. Welch,

M.D., beginning in May of 1992.  AT 151.  Plaintiff reported to Dr. Welch

that although she has continued to care for her home and family, she

does so in discomfort.  *Id.*  In his examination of the plaintiff in May of

1992, Dr. Welch noted mild to moderate tenderness in plaintiff's back

toward the left, and that the stressing of the joints caused an increase in

pain, especially when she attempted to rotate hips inward or outward.  AT

151.  Straight leg raising, however, was performed to ninety degrees

-4-

during this visit.  *Id*.  A preliminary diagnosis of sacroiliitis was made, and plaintiff was treated with an anti-inflammatory and given instructions on some body movements to avoid rotational positions which cause the greatest amount of pain.  AT 152.  Dr. Welch also prescribed Lodine, and instructed plaintiff to remain on Zantac, which she had been taking for ulcer disease.[2]  AT 152.

During a visit in June of 1992, Dr. Welch noted that the plaintiff had a total intolerance for anti-inflammatories, and had not responded to physical therapy.  AT 150.  As a result, Dr. Welch recommended the use of a TENS unit.[3]  AT 150.  During a subsequent visit a month later, Dr. Welch noted some improvement, and that plaintiff had realized partial relief from the pain through taking Darvocet.  AT 149.  By August of 1992, plaintiff had been using the TENS unit for one month, and reported significantly reduced pain during a visit with Dr. Welch.  AT 148.  Dr. Welch noted increased flexibility and recommended purchase of the TENS unit for long term use.  *Id.*  The doctor advised plaintiff that she

---

[2]     Lodine is described by authoritative sources as a nonsteroidal anti-inflammatory drug prescribed as an analgesic and anti-inflammatory, especially to treat arthritis.  Dorland's Illustrated Medical Dictionary 626, 1026 (29th ed. 2000).

[3]     TENS is an acronym for "transcutaneous electrical nerve stimulation"; a TENS unit stimulates a patient's nerves through his or her skin.  Dorland's 1798, 1863.

could return to work with a forty pound lifting restriction, and should be able to resume most normal activities.  *Id.*

Plaintiff visited Dr. Welch again in October 1992.  AT 147.  In his notes of that visit Dr. Welch again expressed his hope that with the aid of her TENS unit, plaintiff could resume her normal work activities.  *Id.*

Plaintiff was also treated for her chronic back pain by Joseph Foote, M.D., her primary care physician, beginning in the spring of 1995.  AT 130.  Magnetic resonance imaging ("MRI") testing of the lumbar spine ordered by Dr. Foote in October of 1995 revealed degenerative disc disease at L4-5 and L5-S1, with diffuse bulging of disc, though with no significant foraminal encroachment or spinal stenosis.  AT 177.

Dr. Foote referred plaintiff to Fredric I. Fagelman, M.D. for an examination of her back in November 1995.  AT 134.  Dr. Fagelman evaluated the results of the MRI, and found no herniated disc.  AT 178.  The doctor noted tenderness in the L4-5 region, but found the plaintiff exhibited fairly good mobility.  AT 178.  Dr. Fagelman found that plaintiff's reflexes were depressed, and that straight leg raising produced some pain, although not radicular in nature.  *Id.*  Dr. Fagelman diagnosed plaintiff as suffering from probable lumbar spondylosis, but recommended

-6-

no further treatment considering plaintiff's intolerance to anti-inflammatories and the fact that she had been tolerating things reasonably well with the Darvocet. *Id.* The record reflects that from the time of her visit in 1995 to Dr. Fagelman and the date of the hearing plaintiff has been seen very infrequently for her back pain, and has utilized Darvocet to control her pain whenever it becomes severe. AT 374-75.

Plaintiff's records were first evaluated by a state agency physician, Richard Blaber, M.D. in November of 1992 for a determination of her RFC. AT 48. Based upon his review, Dr. Blaber opined that plaintiff could occasionally lift and/or carry at least twenty pounds; frequently lift and/or carry ten pounds; stand, walk, or sit six hours in an eight hour work day; and push and/or pull twenty pounds occasionally or ten pounds frequently. AT 50. The doctor found no manipulative, visual, communicative, or environmental limitations. AT 52-53. Dr. Blaber noted that his findings were not significantly different from those of plaintiff's treating physicians noted in the file. AT 55.

In February 1996, plaintiff was seen consultatively by Joseph A. Grossman, M.D. from IMA Disability Services. AT 181. Dr. Grossman noted plaintiff's history of back pain with a mild disorder of the lumbar

spine and arthralgia with pain in the knees.  AT 182.  The doctor found

that the plaintiff exhibited a normal range of motion in the lumbar spine,

with no motor or sensory abnormalities, but with negative straight leg

raising.  *Id.*  Dr. Grossman determined that plaintiff was functionally

impaired for prolonged, repeated vigorous bending, stooping, and

crouching, but found no limitation in her ability to stand, sit, walk, climb,

lift, carry, push and pull with hand and foot controls.  AT 182.  The doctor

also found that she was not impaired with respect to her vision, hearing,

speech, or travel.  *Id.*  In connection with that examination, an X-ray was

taken of plaintiff's lumbosacral spine, revealing no evidence of fracture or

acute bony pathology.  AT 183.  The X-ray results did, however, reveal

mild dextroscoliosis and degenerative arthritic changes of the lumbar

spine, most prominently between L4-5 and L5-S1.  *Id.*

In June of 1997, plaintiff's records were examined by Alan L.

Auerbach, M.D., a state agency medical consultant, for assessment of her

RFC.  AT 77.  Dr. Auerbach based his findings on examination of plaintiff's

record, including Dr. Grossman's report, and reported conclusions similar

to those of Dr. Grossman.  AT 79-80.  Dr. Auberbach found that plaintiff

has the RFC to occasionally lift and/or carry twenty pounds, frequently lift

and/or carry ten pounds, stand and/or walk six hours in an eight hour work day, sit six hours in an eight hour work day, and push and/or pull ten pounds frequently and twenty pounds occasionally.[4]  AT 79.

Michael G. Holland, M.D. consultatively examined the plaintiff on June 18, 1997.  AT 284.  During that examination plaintiff reported that her back pain occasionally radiates to her hips, and that her activities at that time included housework, shopping, cooking, laundry, and reading.  AT 285.  Based upon his examination, Dr. Holland noted no significant tenderness to palpation of plaintiff's back.  AT 285.  In evaluating plaintiff's X-ray results, the examining physician noted the appearance of degenerative disc disease at L4-L5 and L5-S1, as well as the possibility of mild osteoarthritis of the facet joints and the lower portions.  AT 285-86. Dr. Holland recognized plaintiff's history of chronic back pain, but noted that his examination revealed a normal range of motion and no antalgic gait.  AT 286.

In addition to her chronic back pain, plaintiff has experienced some degree of visual impairment.  Plaintiff's eyes were examined by William Hopper, M.D. on three separate occasions between May 1995 and May

---

[4]      Donna M. White, M.D., another state agency physician reviewed the evidence in the file and agreed with Dr. Auerbach's assessment.  AT 85.

1996.  AT 253-54.  At plaintiff's initial visit, Dr. Hopper reported suspecting low tension glaucoma.  AT 253.  Dr. Hopper's second examination of the plaintiff revealed visual acuity of 20/30 OD, 20/25 OS, and intraocular pressure of 19 OD and 15 OS.  *Id.*  When plaintiff was seen subsequently her visual acuity remained the same, and her intraocular pressure was reported to be 20 OD and 18 OS.  AT 254.  In his report to the New York State Department of Social Services Office of Disability Determinations, Dr. Hopper noted a diagnosis of suspect glaucoma OU, though with no definite signs of glaucoma, and that plaintiff was not on any medication for her eye pressure.  *Id.*

In January of 1996, plaintiff was referred to Gregory L. Pinto, M.D. by a local optician.  AT 179.  Dr. Pinto reported that plaintiff appeared to have low tension glaucoma.  AT 180.  Upon examination, plaintiff's best corrected visual acuity was determined to be 20/25 OD, 20/40+ OS, and her visual field revealed an inferior defect OS that appeared contiguous with a blind spot.  *Id.*  Dr. Pinto posited that there could be several explanations for plaintiff's decreased vision, and recommended following the condition, but anticipated no treatment at that point.  *Id.*

Plaintiff has also reported suffering from depression over time,

although she has not sought any significant professional intervention for her symptoms.  As a result of her complaints of depression, plaintiff was examined consultatively by Jacqueline Bashkoff, Ph.D., a state agency mental health examiner, on June 27, 1997.  AT 288.  Dr. Bashkoff noted that plaintiff has had only one outpatient psychiatric evaluation and one inpatient psychiatric evaluation in Glenn Falls Hospital, following a suicide attempt in 1971.  AT 288.  Plaintiff reported to Dr. Bashkoff that she was suffering from high blood pressure, diabetes, arthritis, obesity, hypothyroidism, and a degenerative disc in her back, and had been depressed for some time.  AT 288.  After evaluating the plaintiff, Dr. Bashkoff determined that her insight, judgement and cognitive abilities were intact, and found that she had no difficulty with memory or ability to concentrate.  AT 289.  Dr. Bashkoff also noted that plaintiff was not suicidal, homicidal or experiencing paranoid ideation.  *Id.*  Dr. Bashkoff diagnosed plaintiff with mild dysthymic disorder, and determined that she could benefit greatly from antidepressants.  *Id.*

In July 1997, Richard B. Weiss, M.D., a state medical consultant, evaluated plaintiff's records to determine her mental and physical RFC.  AT 290.  Dr. Weiss confirmed Dr. Bashkoff's diagnosis that plaintiff suffers

from mild dysthymia, an affective disorder disturbing her mood.  AT 293,

301.  The doctor further found, however, that this disorder imposes only a

slight restriction on her activities of daily living and social functioning and

also noted that plaintiff is not significantly limited in understanding,

memory, sustained concentration, persistence, social interaction or

adaptation.  AT 297-300.  With respect to plaintiff's physical capabilities,

Dr. Weiss determined that plaintiff could occasionally lift or carry twenty

pounds; frequently lift or carry ten pounds; stand, walk or sit six hours out

of an eight hour work day; and push and/or pull twenty pounds

occasionally and ten pounds frequently.  AT 304.  Dr. Weiss found plaintiff

had no postural, manipulative, visual, communicative, or environmental

limitations.  AT 305-07.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before The Agency

Plaintiff filed an application for SSI benefits in December 1995,

alleging a back injury and asserting a disability onset date of November 1,

1995.[5]  AT 66.  Plaintiff's application for benefits was denied, both initially

and on reconsideration.  AT 86-89, 90, 93-96.

------

    [5]     In her application, plaintiff noted that her back had been bothering her
since approximately 1981.  AT 66.

-12-

At plaintiff's request, a hearing was scheduled in this matter for May

2,1997, before ALJ Hastings Morse, to address the agency's denial of

plaintiff's SSI benefits application.[6]  AT 44-47.  Prior to the hearing date,

plaintiff's representative requested she be scheduled for a psychological

and rheumatology evaluation.  AT 258-59.  In response, ALJ Morse issued

an order directing that the matter be remanded to the state agency for

evaluation of plaintiff's mental disorder pursuant to 20 C.F.R. §§

404.1520a(d)(1)(iii) and/or 416.920a(d)(1)(iii).  On July 22, 1997, following

a physical examination by Dr. Holland (AT 284-86) and a psychiatric

evaluation by Dr. Bashkoff (AT 288-89), the determination denying plaintiff

benefits was upheld by the agency.  AT 261-64.

At plaintiff's request a hearing was held on October 2, 1998 before

ALJ Margaret J. Quinn.  AT 21-30.  Following that hearing, at which

plaintiff was represented by counsel, ALJ Quinn rendered a decision

dated November 13, 1998.  AT 21-27.  In her decision, ALJ Quinn applied

the governing test for disability, finding that plaintiff had not engaged in

---

[6]      After filing a timely request for a hearing on the issue, plaintiff was
informed by a notice dated December 19, 1996 of a backlog at the Office of Hearings
and Appeals.  AT 101-02.  That notice also advised her of her right to file a motion with
OHA directing it to schedule a hearing and/or issue a decision for interim benefits.  *Id.*
Plaintiff did not seek interim benefits in accordance with that notice.  Plaintiff's Brief
(Dkt. No. 6) at 4.

substantial gainful activity since filing her application for SSI benefits, and

that she suffers from a severe musculoskeletal impairment which fails to

meet or equal the level of severity of any listed, presumptively disabling

condition contained in the governing regulations.  AT 26.  *See* 20 C.F.R.

Pt. 404, Subpt. P, App. 1.  ALJ Quinn went on to find that plaintiff's

impairments do prevent her from performing her past relevant work as a

home health aide and a dishwasher, given the lifting demands associated

with those occupations.  AT 26.

ALJ Quinn next concluded, based upon the various medical findings,

that plaintiff retains the RFC to perform light work activity which requires

her to lift no more than forty pounds.[7]  AT 26.  Based on plaintiff's age,

---

[7] By regulation light work is defined as follows:

> Light work involves lifting no more than 20
> pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very
> little, a job is in this category when it requires
> a good deal of walking or standing, or when it
> involves sitting most of the time with some
> pushing and pulling of arm or leg controls.  To
> be considered capable of performing a full or
> wide range of light work, you must have the
> ability to do substantially all of these activities.
> If someone can do light work, we determine
> that he or she can also do sedentary work,
> unless there are additional limiting factors
> such as loss of fine dexterity or inability to sit
> for long periods of time.

work experience, education, and RFC ALJ Quinn determined that in accordance with Rule 202.20 of the grid, she is not disabled.  AT 26.

The ALJ's opinion became a final determination of the agency on December 4, 2002, when the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.  AT 3-4.

B.    This Action

Plaintiff commenced this action on February 26, 2003.  Dkt. No. 1. Issue was thereafter joined by defendant's filing of an answer, accompanied by an administrative transcript of the proceedings before the agency, on May 21, 2003.  Dkt. Nos. 4, 5.  With the filing of briefs on behalf of the plaintiff on July 7, 2003 (Dkt. No. 6), and the Commissioner on September 17, 2003 (Dkt. No. 8), the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[8]

---

20 C.F.R. § 404.1567(b).

       [8]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;

Procedure.

-16-

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42

U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health &Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

> B.      Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.] "  42 U.S.C. §

423(d)(1)(A).   In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.   *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then

the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

      C.    <u>The Evidence In This Case</u>

The ALJ's finding of no disability is predicated upon her belief that plaintiff's condition restricts her principally to lifting less than forty pounds, and consequently that she retains the RFC to perform a full range of light work activity.  AT 26.  Plaintiff asserts that the ALJ committed reversible error in concluding that she retained the capacity to engage in light work and in relying on the medical-vocational guidelines.  Plaintiff also argues that the ALJ's determination failed to consider plaintiff's impairments in combination with one another, to give appropriate weight to her subjective complaints of debilitating pain, and to recognize the severity of her depression.

      1.    <u>RFC</u>

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp.2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

In this case, there is substantial evidence in the record to support the ALJ's finding of plaintiff's ability to perform light work activity as defined in 20 CFR 416.967(b).  AT 26.  Over the course of time various health care professionals have noted plaintiff's ability to perform at such a

level.  *See*, *e.g.*, AT 50, 52-53, 55 (state agency physician, Dr. Blaber); AT

79 (state agency medical consultant, Dr. Auerbach); AT 147-48 (Dr.

Welch); AT 182 (Dr. Grossman from IMA Disability Services).  Indeed, in

August of 1992 Dr. Welch indicated his belief that plaintiff could return to

work with a forty pound weight lifting restriction.  AT 148.  When plaintiff

was seen for a follow up by Dr. Welch two months later he recommended

that she remain active and return to normal work activity.  AT 147.

Plaintiff argues that Dr. Welch's 1992 recommendation cannot be

used as a basis for the ALJ's 1998 RFC finding.  Plaintiff's Brief (Dkt. No.

6) at 17.  As late as November 1995, however, Dr. Fagelman found that

plaintiff's mobility was fairly good, and no further treatment was necessary

as she seemed to be tolerating the pain reasonably well with Darvocet

which was used in 1992 by Dr. Welch to treat plaintiff.  AT 149, 178.

Moreover, Dr. Holland examined the plaintiff in 1997 and found a normal

range of motion.  AT 286.

In support of her challenge to the ALJ's RFC finding, plaintiff is

unable to point to any opinion from a professional revealing a greater

lifting restriction over the relevant times than that discerned by the ALJ.

Accordingly, leaving aside issues associated with plaintiff's subjective

complaints of debilitating pain and plaintiff's claim that the ALJ failed to

consider plaintiff's conditions in combination, the RFC finding is supported

by substantial evidence.

### 2.    Combination of Conditions

_____Plaintiff contends that the ALJ failed to consider her multiple

impairments in combination with one another in assessing whether she is

disabled.  Specifically, plaintiff claims that the ALJ viewed her back

condition and vision impairment in isolation, and without also considering

her mental health impairment, instead of ascertaining limitations presented

by these conditions in tandem.  Plaintiff also claims that the ALJ failed to

consider the further limitations associated with her hypothyroidism;

diabetes; gastroesophageal reflux disease; obesity; headaches; total loss

of hearing in her right ear; arthraglia and pain in her knees and hips; and

pain and numbness in her hands, arms and feet.

By regulation, an ALJ is required to consider the disabling effects of

a claimant's impairments in combination with one another even if any of

the impairments, when considered alone, would not be sufficiently severe

to qualify as disabling.  20 C.F.R. § 416.923; *Dixon v. Shalala,* 54 F.3d

1019, 1031 (2d Cir.1995).  "If a severe combination of impairments is

-24-

found, 'the combined impact of the impairments will be considered throughout the disability determination process.'" *Martone*, 70 F.Supp.2d at 153 (citing §§ 404.1523, 416.923).  If a severe combination of impairments is not found, then the claimant is determined not to be disabled.  *Id.*

_____In this instance, ALJ Quinn properly considered the evidence in the record to determine that a severe combination of impairments does not exist and plaintiff retains the RFC to perform light work.  The ALJ found no severe mental or visual impairment existed, since there was no evidence that the conditions limited her ability to perform work related functions.  AT 23.  The ALJ did find the evidence reflected that plaintiff suffers from a severe musculoskeletal impairment, but that the condition failed to meet or equal the level of severity of any listed, presumptively disabling condition. AT 23.  ALJ Quinn also considered plaintiff's subjective allegations of pain, including her testimony that she suffers from hernia, borderline diabetes, and a hearing impairment which causes imbalance, and determined that these claims are entirely unsupported by the evidence in the record.  AT 24-25.

There is no evidence in the record that plaintiff's combined

impairments cause her to be unable to perform any substantial gainful activity.  The RFC assessments completed by Dr. Blaber, Dr. Auerbach, and Dr. Weiss each note that the plaintiff retains the capability to occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand, sit, and/or walk six hours in an eight hour work day; and push and/or pull ten pounds frequently and twenty pounds occasionally. AT 50, 79, 304.  Dr. Weiss specifically took into account plaintiff's mood disorder in his RFC analysis, finding no significant limitations resulting from that condition.  AT 299-300.

The record discloses that plaintiff's capabilities are fully consistent with the requirements for the performance of a full range of light work. *See Martone*, 70 F.Supp.2d at 153.  While plaintiff now urges a host of conditions other than her chronic back pain as significantly limiting her ability to work, there is no evidence in the record to support those claims. Tellingly, when asked by the ALJ why she was not working, plaintiff mentioned only her back pain, without alluding to her many other conditions now urged as imposing additional limitations on her ability to work.  AT 374.  Accordingly, I recommend a finding that the ALJ properly considered plaintiff's multiple impairments in combination with one another

-26-

in making the finding of no disability.

### 3.   Pain

In further support of her appeal, plaintiff challenges the ALJ's rejection of her claims of debilitating pain.  During the hearing in this matter, plaintiff testified that she continues to experience a considerable degree of low back pain.  AT 374.  Ms. Archambeau also testified that she is deaf in one ear, causing impaired balance, suffers from a hernia, and is a borderline diabetic.  AT 377, 381.  Plaintiff further claims to suffer from depression and unusual sleep habits.  AT 25.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the

claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[9]  *Barnett*, 13 F. Supp.2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5)

---

[9]     In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of her back pain and other ailments.  The fact that she suffers from discomfort, however, does not automatically qualify her as disabled, since "disability requires more than mere inability

-29-

to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

The ALJ's rejection of plaintiff's subjective allegations of pain, based principally upon the lack of clinical and diagnostic support, is well supported and adequately explained in his decision.  AT 25.  With regard to clinical findings, ALJ Quinn noted that 1) upon examination, plaintiff exhibits normal motor and sensory responses; 2) there is no evidence of muscle atrophy; 3) she exhibits no radicular signs or symptoms; and 4) plaintiff's range of motion is regarded as normal.  AT 25.  In further support of her finding, ALJ Quinn observed that plaintiff has only been subject to a forty pound lifting restriction in her daily activities, and has not seen a physician in more than a year.  AT 25.  Additionally, the ALJ cited the absence of evidence of disc herniation, spinal stenosis or other significant bony pathology.  *Id.*  With respect to plaintiff's mild dysthymic disorder, the ALJ noted that her attention, memory, concentration, and cognitive abilities have remained unimpaired, and that she has not undergone ongoing treatment.  AT 25.

Based on the foregoing, I find that the ALJ appropriately stated the basis for her rejection of the plaintiff's testimony with sufficient particularity

to support a finding by the reviewing court that her skepticism regarding the degree of pain experienced by the plaintiff as a result of her condition was legitimate and supported by substantial evidence.

### 4.   Plaintiff's Mental Condition

In support of her request to overturn the finding of no disability, plaintiff also argues that the ALJ erred in evaluating her mental impairment.

Where an alleged disability consists of a mental impairment, a special procedure is followed at each level of administrative review.  20 C.F.R. §§ 404.1520a; *Martone*, 70 F. Supp.2d at 149.  First, the Commissioner records the pertinent signs, symptoms, findings, functional limitations, and effects of treatments contained in the record.  *Id.*  If a mental impairment is determined to exist, the Commissioner must next indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent.  *Id.*  The Commissioner then rates the degree of functional loss resulting from the impairment – on a scale ranging from no limitation to severe limitation, which is incompatible with the ability to do work-like functions – analyzing four factors: 1) activities of daily living; 2) social functioning;  3)

concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings.  *Id.*  The Commissioner must then determine the severity of the mental impairment, and whether it meets or equals a listed mental disorder.  *Id.*  If the impairment is severe, but does not meet or equal a listed mental disorder, the Commissioner analyzes the claimant's RFC, considering whether the claimant has a limited ability to carry out certain mental activities – such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting – that may reduce his or her ability to do past work and other work.  *See* 20 C.F.R. §§ 404.1520a, 404.1545(c).

When evaluating the severity of mental impairments, the ALJ is required to use a Psychiatric Review Technique Form ("PRTF").  *See* 20 C.F.R. §§ 404.1520a(e).  The PRTF lists the signs, symptoms and other medical findings which establish the existence of the mental impairment and is also used to rate the degree of functional loss resulting from the mental impairment.  20 C.F.R. § 404.1520a(e).

In this instance the ALJ considered evidence in the record, used the PRTF, AT 28, and concluded that plaintiff does not suffer from any

functional limitations as a result of any mental disorder.  *See* AT 23, 30.

The record, while suggesting the existence of some degree of mental

impairment as a result of an affective disorder, contains substantial

evidence to support this determination.

Plaintiff was examined by Dr. Jacqueline Bashkoff, a state mental

health examiner, on June 27, 1997.  *See* AT 288.  After evaluating plaintiff

Dr. Bashkoff noted that her insight, judgment and cognitive abilities were

intact.  AT 289.  Dr. Bashkoff also determined that plaintiff had no difficulty

with memory or ability to concentrate.  *Id.*  She diagnosed plaintiff as

suffering from a mild dysthymic disorder noting that she would benefit

greatly from antidepressants.  *Id.*

In July 1997, Dr.  Richard Weiss, a state medical consultant,

reviewed plaintiff's records and confirmed Dr. Bashkoff's diagnosis of mild

dysthymia, an affective disorder disturbing her mood.  AT 293, 301.  The

consultant agreed with Dr. Bashkoff that the disorder imposed only slight

restriction on plaintiff's daily activities and social functioning.  AT 297.

It is true that although not rising to a level sufficient to independently

support a finding of disability, a mental condition can present a

nonexertional impairment which can bear upon a claimant's RFC.  *See*

-33-

*Grissom v. Barnhart*, 416 F.3d 834, 837-38 (8th Cir. 2005).  In this case, however, the record is devoid of any evidence to suggest that plaintiff's mental condition imposed limitations beyond those recognized in the ALJ's RFC finding, and upon which the determination of no disability was premised.  Accordingly, the presence of a mental condition does not present a nonexertional limitation which would undermine a finding of no disability.

In sum, there is substantial evidence in the record to support ALJ Quinn's determination that plaintiff is not suffering from a severe mental impairment which would reasonably be expected to limit her ability to perform basic work related functions, or to limit her RFC beyond the bounds recognized by the ALJ in his decision

### 5.   Application of Grid

Plaintiff claims that the ALJ committed reversible error by relying on the grid to make a finding of non-disability in light of the claimed exertional and nonexertional impairments.

Ordinarily, the Commissioner can meet her burden in connection with the fifth step of the relevant disability test by utilizing the grid.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601,

-34-

604 (2d Cir. 1986).  The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy.  *Id.*  Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved.  *Bapp*, 802 F.2d at 605. If a plaintiff's situation fits well within a particular classification, then resort to the grid is appropriate.  *Id.*  If, on the other hand, nonexertional impairments, including pain, *significantly* limit the range of work permitted by exertional limitations, then use of the grid is inappropriate, in which case further evidence and/or testimony is required.[10]  *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

The Commissioner's reliance on the grid to provide substantial evidence is defensible in this case only if it can be said that the claimant does not suffer from any exertional or nonexertional limitations that

---

[10]   As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

preclude him or her from performing all or substantially all of the functions associated with the full range of light work.  *Bapp*, 802 F.2d at 604-05.  In this case, aside from those associated with her back condition, plaintiff's exertional and nonexertional limitations are not substantial.  The evidence in the record supports the finding that avoidance of lifting forty or more pounds is the only restriction that has been placed by health care providers on plaintiff's daily activity.  Despite plaintiff's subjective allegations of pain and testimony as to her limited daily activities, the evidence in the record supports the conclusion that plaintiff can engage in a full range of light work.  With respect to plaintiff's nonexertional limitations, as I have already found plaintiff's mental disorder does not impose significant limitations on her ability to engage in substantial gainful activity. *See Martone*, 70 F.Supp.2d at 154.  I therefore recommend a finding that the Commissioner's conclusion of no disability, based upon use of the grid, is supported by substantial evidence in the record.

IV.    SUMMARY AND RECOMMENDATION

    In determining that the plaintiff retains the RFC to perform light work, the ALJ properly considered the medical evidence in the record.  In making the determination of no disability the ALJ did not fail to consider

claimant's multiple impairments in combination with one another.  Further,

the ALJ properly assessed and rejected plaintiff's subjective complaints of

debilitating pain, in large part based upon the lack of clinical evidence that

plaintiff's musculoskeletal condition or other claimed impairments could be

susceptible of providing such pain.  ALJ Quinn also did not improperly

overlook plaintiff's mental deficiency, inasmuch as the record supports her

determination that it was not severe to the extent that it could reasonably

be expected to limit her ability to perform basic work-related functions, nor

is there evidence that it affected plaintiff's RFC by limiting her capabilities

beyond those bounds discussed by the ALJ.  Lastly, the ALJ did not err in

her reliance on the grid to determine that plaintiff is not disabled.

Based upon the foregoing, it is hereby

RECOMMENDED that defendant's motion for judgment on the

pleadings be GRANTED, the Commissioner's determination of no

disability be AFFIRMED, and that plaintiff's complaint in this action be

DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*,

984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties by regular mail.

Dated:      February 3, 2006
            Syracuse, NY

G:\socialsecurity\Archambeau.wpd

David E. Peebles
U.S. Magistrate Judge