**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONNA M. ARCHAMBEAU,**

        **Plaintiff,**

**v.**     6:03-CV-159
       (NAM/DEP)

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

        **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| *For Plaintiff* | |
| Legal Aid Society for | Mary M. Withington, Esq. |
| Northeastern New York | |
| 10 Lake Avenue | |
| Saratoga Springs, New York 12866 | |
| | |
| *For Defendant* | |
| Hon. Glenn T. Suddaby | William H. Pease, Esq. |
| United States Attorney for the | Assistant U.S. Attorney |
| Northern District of New York | |
| P.O. Box 7198 | |
| 100 S. Clinton Street | |
| Syracuse, NY 13261-7198 | |
| | |
| Office of General Counsel | Barbara L. Spivak, Esq. |
| Social Security Administration | Chief Counsel, Region II |
| 26 Federal Plaza | |
| New York, NY 10278 | Dennis J. Canning, Esq. |
| | Assistant Regional Counsel |

Norman A. Mordue, Chief Judge:

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

      Plaintiff Donna Archambeau brings the above-captioned action pursuant to 42 U.S.C. §§

405(g) and 1382(c)(3) of the Social Security Act, seeking review of the Commissioner of Social Security's decision to deny her application for Supplemental Security Income ("SSI") benefits. This matter was referred to United States Magistrate Judge David E. Peebles for a Report-Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(d).  Magistrate Judge Peebles recommended that this Court affirm the Commissioner's decision denying disability benefits and dismiss the complaint.  Presently before the Court are plaintiff's objections to the Report-Recommendation.

## II.    FACTUAL BACKGROUND

Neither party has objected to Magistrate Judge Peebles' recitation of the background in this case.  Accordingly, the Court adopts the portion of the Report and Recommendation entitled "Background" in its entirety:

> Plaintiff was born on July 3, 1950; at the time of the administrative hearing in this matter, she was forty-eight years of age. Administrative Transcript at pp. 57, 368. The plaintiff is married, and has two children, both of whom are now over the age of eighteen. AT 368-69. Ms. Archambeau is a high school graduate. AT 370.
>
> Plaintiff was last employed in 1991 in the field of home health services. AT 370-71. In that position, Ms. Archambeau transported patients, cooked for them, and did their household cleaning. AT 371.  Before that, plaintiff worked full-time as a cafeteria steward; her duties in that position included cleaning the cafeteria, setting up food for the employees, and cleaning up after them. AT 372. Plaintiff testified that on a typical work day the position involved moderate lifting throughout the day, and heavy lifting about twice a day. AT 372-74.
>
> Plaintiff has experienced chronic lower back pain beginning with the birth of her youngest son in 1981, and described by her as becoming more debilitating over the past several years. AT 151. Plaintiff attributes being taken out of her position as a home health aide in December 1990 and her inability to return to functional work since then to her back pain. *Id*. Plaintiff sought treatment for her back condition from David G. Welch, M.D., beginning in May of 1992. AT 151. Plaintiff reported to Dr. Welch that although she has continued to care for her home and family, she does so in discomfort. *Id*. In his examination of the plaintiff in May of 1992, Dr. Welch noted mild to moderate tenderness in plaintiff's back toward the left, and that the stressing of the joints caused an increase in pain,

2

especially when she attempted to rotate hips inward or outward. AT 151. Straight leg raising, however, was performed to ninety degrees during this visit. *Id*. A preliminary diagnosis of sacroiliitis was made, and plaintiff was treated with an anti-inflammatory and given instructions on some body movements to avoid rotational positions which cause the greatest amount of pain. AT 152. Dr. Welch also prescribed Lodine, and instructed plaintiff to remain on Zantac, [FN2 Lodine is described by authoritative sources as a nonsteroidal anti-inflammatory drug prescribed as an analgesic and anti-inflammatory, especially to treat arthritis. Dorland's Illustrated Medical Dictionary 626, 1026 (29th ed. 2000).] which she had been taking for ulcer disease. AT 152.

During a visit in June of 1992, Dr. Welch noted that the plaintiff had a total intolerance for anti-inflammatories, and had not responded to physical therapy. AT 150. As a result, Dr. Welch recommended the use of a TENS unit.3 AT 150. [FN3TENS is an acronym for "transcutaneous electrical nerve stimulation"; a TENS unit stimulates a patient's nerves through his or her skin. Dorland's 1798, 1863.] During a subsequent visit a month later, Dr. Welch noted some improvement, and that plaintiff had realized partial relief from the pain through taking Darvocet. AT 149. By August of 1992, plaintiff had been using the TENS unit for one month, and reported significantly reduced pain during a visit with Dr. Welch. AT 148. Dr. Welch noted increased flexibility and recommended purchase of the TENS unit for long term use. *Id*. The doctor advised plaintiff that she could return to work with a forty pound lifting restriction, and should be able to resume most normal activities. *Id*.

Plaintiff visited Dr. Welch again in October 1992. AT 147. In his notes of that visit Dr. Welch again expressed his hope that with the aid of her TENS unit, plaintiff could resume her normal work activities. *Id*. Plaintiff was also treated for her chronic back pain by Joseph Foote, M.D., her primary care physician, beginning in the spring of 1995. AT 130. Magnetic resonance imaging ("MRI") testing of the lumbar spine ordered by Dr. Foote in October of 1995 revealed degenerative disc disease at L4-5 and L5-S1, with diffuse bulging of disc, though with no significant foraminal encroachment or spinal stenosis. AT 177.

Dr. Foote referred plaintiff to Fredric I. Fagelman, M.D. for an examination of her back in November 1995. AT 134. Dr. Fagelman evaluated the results of the MRI, and found no herniated disc. AT 178. The doctor noted tenderness in the L4-5 region, but found the plaintiff exhibited fairly good mobility. AT 178. Dr. Fagelman found that plaintiff's reflexes were depressed, and that straight leg raising produced some pain, although not radicular in nature. *Id*. Dr. Fagelman diagnosed plaintiff as suffering from probable lumbar spondylosis, but recommended no further treatment considering plaintiff's intolerance to anti-inflammatories and the fact that she had been tolerating things reasonably well with the Darvocet. *Id*. The record reflects that from the time of her visit in 1995 to Dr. Fagelman and the date of the hearing plaintiff has been seen very infrequently

for her back pain, and has utilized Darvocet to control her pain whenever it becomes severe. AT 374-75.

Plaintiff's records were first evaluated by a state agency physician, Richard Blaber, M.D. in November of 1992 for a determination of her RFC. AT 48. Based upon his review, Dr. Blaber opined that plaintiff could occasionally lift and/or carry at least twenty pounds; frequently lift and/or carry ten pounds; stand, walk, or sit six hours in an eight hour work day; and push and/or pull twenty pounds occasionally or ten pounds frequently. AT 50. The doctor found no manipulative, visual, communicative, or environmental limitations. AT 52-53. Dr. Blaber noted that his findings were not significantly different from those of plaintiff's treating physicians noted in the file. AT 55.

In February 1996, plaintiff was seen consultatively by Joseph A. Grossman, M.D. from IMA Disability Services. AT 181. Dr. Grossman noted plaintiff's history of back pain with a mild disorder of the lumbar spine and arthralgia with pain in the knees. AT 182. The doctor found that the plaintiff exhibited a normal range of motion in the lumbar spine, with no motor or sensory abnormalities, but with negative straight leg raising. *Id*. Dr. Grossman determined that plaintiff was functionally impaired for prolonged, repeated vigorous bending, stooping, and crouching, but found no limitation in her ability to stand, sit, walk, climb, lift, carry, push and pull with hand and foot controls. AT 182. The doctor also found that she was not impaired with respect to her vision, hearing, speech, or travel. *Id*. In connection with that examination, an X-ray was taken of plaintiff's lumbosacral spine, revealing no evidence of fracture or acute bony pathology. AT 183. The X-ray results did, however, reveal mild dextroscoliosis and degenerative arthritic changes of the lumbar spine, most prominently between L4-5 and L5-S1. *Id*.

In June of 1997, plaintiff's records were examined by Alan L. Auerbach, M.D., a state agency medical consultant, for assessment of her RFC. AT 77. Dr. Auerbach based his findings on examination of plaintiff's record, including Dr. Grossman's report, and reported conclusions similar to those of Dr. Grossman. AT 79-80. Dr. Auerbach found that plaintiff has the RFC to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk six hours in an eight hour work day, sit six hours in an eight hour work day, and push and/or pull ten pounds frequently and twenty pounds occasionally. [FN4 Donna M. White, M.D., another state agency physician reviewed the evidence in the file and agreed with Dr. Auerbach's assessment. AT 85.] AT 79.

Michael G. Holland, M.D. consultatively examined the plaintiff on June 18, 1997. AT 284. During that examination plaintiff reported that her back pain occasionally radiates to her hips, and that her activities at that time included housework, shopping, cooking, laundry, and reading. AT 285. Based upon his examination, Dr. Holland noted no significant tenderness to palpation of

plaintiff's back. AT 285. In evaluating plaintiff's X-ray results, the examining physician noted the appearance of degenerative disc disease at L4-L5 and L5-S1, as well as the possibility of mild osteoarthritis of the facet joints and the lower portions. AT 285-86. Dr. Holland recognized plaintiff's history of chronic back pain, but noted that his examination revealed a normal range of motion and no antalgic gait. AT 286.

In addition to her chronic back pain, plaintiff has experienced some degree of visual impairment. Plaintiff's eyes were examined by William Hopper, M.D. on three separate occasions between May 1995 and May 1996. AT 253-54. At plaintiff's initial visit, Dr. Hopper reported suspecting low tension glaucoma. AT 253. Dr. Hopper's second examination of the plaintiff revealed visual acuity of 20/30 OD, 20/25 OS, and intraocular pressure of 19 OD and 15 OS. *Id*. When plaintiff was seen subsequently her visual acuity remained the same, and her intraocular pressure was reported to be 20 OD and 18 OS. AT 254. In his report to the New York State Department of Social Services Office of Disability Determinations, Dr. Hopper noted a diagnosis of suspect glaucoma OU, though with no definite signs of glaucoma, and that plaintiff was not on any medication for her eye pressure. *Id*.

In January of 1996, plaintiff was referred to Gregory L. Pinto, M.D. by a local optician. AT 179. Dr. Pinto reported that plaintiff appeared to have low tension glaucoma. AT 180. Upon examination, plaintiff's best corrected visual acuity was determined to be 20/25 OD, 20/40+ OS, and her visual field revealed an inferior defect OS that appeared contiguous with a blind spot. *Id*. Dr. Pinto posited that there could be several explanations for plaintiff's decreased vision, and recommended following the condition, but anticipated no treatment at that point. *Id*.

Plaintiff has also reported suffering from depression over time, although she has not sought any significant professional intervention for her symptoms. As a result of her complaints of depression, plaintiff was examined consultatively by Jacqueline Bashkoff, Ph.D., a state agency mental health examiner, on June 27, 1997. AT 288. Dr. Bashkoff noted that plaintiff has had only one outpatient psychiatric evaluation and one inpatient psychiatric evaluation in Glenn Falls Hospital, following a suicide attempt in 1971. AT 288. Plaintiff reported to Dr. Bashkoff that she was suffering from high blood pressure, diabetes, arthritis, obesity, hypothyroidism, and a degenerative disc in her back, and had been depressed for some time. AT 288. After evaluating the plaintiff, Dr. Bashkoff determined that her insight, judgement and cognitive abilities were intact, and found that she had no difficulty with memory or ability to concentrate. AT 289. Dr. Bashkoff also noted that plaintiff was not suicidal, homicidal or experiencing paranoid ideation. *Id*. Dr. Bashkoff diagnosed plaintiff with mild dysthymic disorder, and determined that she could benefit greatly from antidepressants. *Id*.

> In July 1997, Richard B. Weiss, M.D., a state medical consultant, evaluated plaintiff's records to determine her mental and physical RFC. AT 290. Dr. Weiss confirmed Dr. Bashkoff's diagnosis that plaintiff suffers from mild dysthymia, an affective disorder disturbing her mood. AT 293, 301. The doctor further found, however, that this disorder imposes only a slight restriction on her activities of daily living and social functioning and also noted that plaintiff is not significantly limited in understanding, memory, sustained concentration, persistence, social interaction or adaptation. AT 297-300. With respect to plaintiff's physical capabilities, Dr. Weiss determined that plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand, walk or sit six hours out of an eight hour work day; and push and/or pull twenty pounds occasionally and ten pounds frequently. AT 304. Dr. Weiss found plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. AT 305-07.

Dkt. no.9, pp.3-12.

## III. Administrative Law Judge's Decision

To be eligible for SSI benefits, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in h[er] prior type of work, the Commissioner must find h[er] disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the SSA bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted)).

In this case, the Administrative Law Judge ("ALJ") found at step one, that plaintiff had not engaged substantial gainful activity since filing her application for SSI benefits on December 5, 1995. At the second step, the ALJ determined that plaintiff's musculoskeletal impairments

were severe. At the third step, the ALJ concluded that plaintiff's musculoskeletal impairments neither met nor equaled any impairment listed in Appendix 1 of the Regulations. At the fourth step, the ALJ found that plaintiff lacked the ability to perform her past relevant work as a home health aid and dishwasher because of the lifting demands of such occupations, and, since she was restricted from lifting more than forty pounds, had a residual functional capacity to perform light work. Accordingly, the burden shifted to the Commissioner to show, at step five, the existence of jobs in sufficient numbers in the national economy which plaintiff was capable of performing. At the fifth step, relying on the medical-vocational guidelines ("the grids") set forth in the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that there are jobs in sufficient numbers within the national economy that plaintiff can perform despite her limitations. The ALJ therefore concluded that plaintiff was not eligible for SSI benefits. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. This action followed.

**IV.    Report-Recommendation**

In the Report-Recommendation, Magistrate Judge Peebles concluded that: (1) there is substantial evidence in the record to support the ALJ's finding that plaintiff had the residual functional capacity to perform light work activity; (2) the ALJ properly considered plaintiff's multiple impairments in combination with one another; (3) the ALJ's rejection of plaintiff's subjective allegations of disabling back pain for lack of clinical and diagnostic support is well supported and adequately explained; (4) there is substantial evidence in the record to support the ALJ's determination that plaintiff's mental impairment would not reasonably be expected to limit her ability to perform basic work functions or limit her residual functional capacity beyond the bounds recognized by the ALJ in her decision; and (5) the ALJ did not err in relying on the grid

7

to provide substantial evidence that there were a sufficient number of jobs existing in the national economy which plaintiff could perform. Accordingly, Magistrate Judge Peebles recommended that the Court affirm the decision of the Commissioner to deny plaintiff's application for SSI benefits.

Presently before the Court are plaintiff's specific objections to four of the above-outlined conclusions in Magistrate Judge Peeble's Report-Recommendation. Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court engages in a *de novo* review of any part of a magistrate judge's report-recommendation to which a party specifically objects. Failure to object timely to any portion of a magistrate's report-recommendation operates as a waiver of further judicial review of those matters. *See Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Secretary of Health & Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989).

**V.     Discussion**

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence" or when a decision is based on legal error. 42 U.S.C. § 405(g); *Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*, 221 F.3d at 131 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). As noted, the Court also reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).

**A.     Residual Functional Capacity**

Plaintiff argues that the ALJ erred in concluding that she had the residual functional capacity to perform light work. Specifically, plaintiff submits that the ALJ should not have

relied on a six-year-old forty-pound lifting restriction to conclude that she had the residual functional capacity to perform light work.[1] As noted below, light work involves "lifting no more than 20 pounds at a time". 20 C.F.R. § 404.1567(b). Even assuming the record would not support a finding that plaintiff could lift up to 40 pounds, there is substantial evidence in the record that plaintiff could perform light work. For instance, Dr. Fagelman found that plaintiff had good mobility in her back and required no further treatment as she was tolerating the pain with Darvocet. Drs. Holland and Grossman similarly found that plaintiff could ambulate with a normal gate and had normal range of motion. Further, the state agency physicians found that plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 6 hours in an 8 hour day, sit with normal breaks for about 6 hours in an 8 hour day and had no limitation with regard to pushing and/or pulling. AT 50 and 79. Thus, there is ample evidence in the record to support the ALJ's conclusion that plaintiff could perform light work.

Plaintiff urges that the ALJ should have given little weight to the opinions of Drs. Grossman and Holland, consulting physicians, because they did not complete residual functional assessment forms or ask plaintiff to perform any work related activities during the consultative

---

[1] The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

9

examination. There is no indication that the ALJ gave either physician's opinion more weight than it was entitled. *See Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) ("in evaluating a claimant's disability, a consulting physician's opinions or report should be given limited weight."). Moreover, their opinions are consistent with the other medical evidence in the record. Dr. Grossman found plaintiff could ambulate with a normal gate and that plaintiff had normal range of motion in her lumbar spine (with complaints of pain), negative straight leg raising, no motor or sensory abnormalities, and no muscle atrophy. Dr. Holland found that plaintiff could ambulate with a normal gate, had a normal range of motion, 5/5 strength in her lower extremeties, negative straight leg raising, and intact sensation. Dr. Welch found plaintiff could perform straight leg raising to 90 degrees, and that there was no evidence of muscle spasm or paravertebral tenderness. Dr. Fagelman found that plaintiff had good mobility of the back, tenderness at the L4-5 level, no radicular pain on straight leg raising, and normal motor and sensory responses. Thus, the opinions of Drs. Grossman and Holland are supported by substantial evidence. Plaintiff further claims that their opinions are entitled to little weight because they did not complete a questionnaire regarding her residual functional capacity, or ask plaintiff, during the examination, to stand for six hours, frequently lift over ten pounds in an eight hour period, or to return five out of seven days to perform such activities. As already noted above, however, there is no indication in the record that the ALJ accorded either opinion more weight than it was entitled. Thus, plaintiff's objection is without merit.

Plaintiff claims that because the ALJ found that she could not return to work as a dishwasher and home health aide, her conclusion that plaintiff could work at the light activity level was in error. Plaintiff asserts that those positions are reflective of the type of work available at the light activity level, thus it was error to conclude she could perform light work.

10

All three positions, however, required lifting in excess of 40 pounds.  AT 125, 126, 373.  Thus, plaintiff, under any interpretation of her lifting restriction (20 or 40 pounds), would not be able to return to her prior work.  For the same reason, there is no error in the ALJ's failure to make an explicit finding that plaintiff could not return to work as a steward as the lifting restrictions in the record foreclose any conclusion to the contrary.

### B. Subjective Complaints

Plaintiff challenges the ALJ's adverse finding as to her complaints of disabling pain on the basis that it is not supported by substantial evidence.  When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]"  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).   The ALJ, however, retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Marcus*, 615 F.2d at 27.  When a claimant's testimony regarding pain suggests a greater severity of impairment than can be shown by objective medical evidence, the ALJ must consider the following factors in evaluating a claimant's symptoms and complaints of pain: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of pain or other symptoms; and (vi) any measures used to relieve pain or other symptoms.  *See* 20 C.F.R. §§ 404.1529(c)(3)(I)-(vi), 416.929(c)(3)(i)-(vi). When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether

there are legitimate reasons for the ALJ's disbelief[.]" *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).  If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In this case, as the ALJ noted in her decision, plaintiff testified that she experiences considerable low back pain, is deaf in the right ear, suffers a hernia, is a borderline diabetic, has suffered from depression since 1987, and has unusual sleep habits.  Plaintiff stated at her hearing that she was able to walk in her home, speculated that she could stand up to thirty minutes, and spends much of her day sitting.  The ALJ found that the record did not support plaintiff's complaints.

Plaintiff argues that her condition, degenerative disc disease, is known to cause back pain, and, given her height of 5'0" and weight, which ranged between 200 and 218 pounds, it is reasonable to conclude that mobility was difficult.  As discussed above, the medical evidence uniformly indicates that plaintiff had good mobility, could ambulate with a normal gate, and had a normal range of motion.  Plaintiff asserts that the ALJ should have found that her inactivity led to further deconditioning.  Since there is substantial medical evidence in the record to support the ALJ's conclusion that plaintiff's back pain was not as limiting as plaintiff claimed it to be, there is likewise no basis for concluding that plaintiff's inactivity (due to pain) led to deconditioning.

In concluding that plaintiff's complaints of pain and other symptoms did not meet the threshold of establishing her burden of proof, the ALJ relied on the absence of evidence that plaintiff had received recent treatment for her conditions.  Plaintiff asserts that sporadic health insurance coverage and limited financial means prohibited her from seeking treatment, and thus

12

argues that the ALJ erred in drawing such a conclusion.  Plaintiff argues that the ALJ should have found instead that her inability to obtain treatment led to an exacerbation of her symptoms.  While there is some indication that the ALJ was apprised of plaintiff's lack of health insurance at the hearing, there is no evidence which would have supported a finding that the lack of treatment led to a worsening of plaintiff's symptoms.  Thus, there was no evidentiary basis for the ALJ to reach such a conclusion.[2]

Plaintiff argues that the symptoms resulting from her combination of physical and mental impairments render her unable to work and that the ALJ erred in discarding her testimony regarding her daily activities and should have instead concluded that plaintiff is incapable of performing work activities.  The additional physical and mental impairments to which plaintiff refers include hypothyroidism, diabetes, gastroesophageal reflux disease and peptic ulcer, numbness in her arms and hands, arthralgia with pain in her knees and hips, dizziness, headaches, and depression.  The ALJ's rejection of plaintiff's complaints of disabling pain is well supported by the evidence and her reasoning tracks the legal standard outlined above.  The ALJ found that plaintiff's complaints of pain and other symptoms exceeded the objectively verifiable evidence regarding her back condition, her mild dysthymic disorder, and other conditions.  The ALJ was therefore required to, and did, consider plaintiff's daily activities, medication, and causes of pain to determine the extent to which plaintiff's symptoms affect her functional capacity.  20 C.F.R. § 404.1529(c)(3)(i)-(iv).  The ALJ found plaintiff did some light dishwashing and laundry, made beds, and performed other housework.  The ALJ further noted

---

[2]In support of her argument, plaintiff cites evidence that on June 15, 2000, she attempted suicide by ingesting 30 tablets of Vistaril, an anti-anxiety medication.  AT 322-25.  This evidence, while new and material, did not relate to the period on or before the ALJ's November 13, 1998, decision.  While the regulations permit claimants to submit new and material evidence after an ALJ's decision, the evidence "must relate to the period on or before the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).

that clinical findings regarding her back were benign, that plaintiff testified that she used no medication to manage her diabetes, that she has not been seen by a physician in more than one year for her back, and that there was no history of ongoing treatment for depression, with which she has suffered since 1987. The ALJ concluded that while plaintiff may experience some discomfort, there was no evidence that it was of the degree to preclude the performance of substantial gainful activity. Thus, the ALJ adhered to the proper legal standard and her determination that plaintiff's subjective complaints were not entirely credible is supported by substantial evidence.

### C. Combination of Impairments

In her objections, plaintiff addresses the ALJ's obligation to consider whether a claimant's mental and physical impairments in combination have impacted her ability to work, *see* 20 C.F.R. § 416.923, and argues that the ALJ failed to do so in this case. The ALJ's decision indicates that the ALJ expressly considered plaintiff's back condition, visual impairment, hernia, borderline diabetes, hearing impairment, and depression in evaluating her ability to work. While plaintiff also complained of her hypothyroidism, gastroesophageal reflux disease and peptic ulcer, numbness in her arms and hands, arthralgia with pain in her knees and hips, dizziness, and headaches, there is no evidence in the record that would suggest these impairments alone, or in combination, diminished her capacity to perform light work. Accordingly, plaintiff's objection is without merit.

### D. Medical-Vocational Guidelines

Plaintiff contends that because her assorted impairments eroded her capacity to work the ALJ was not permitted to rely on the medical vocational guidelines at step five, and should have either obtained a residual functional capacity assessment from one of her treating sources or the

14

testimony of a vocational expert. As explained, since the ALJ determined at step four that plaintiff could not return to prior work, the burden shifted to the Commissioner at step five to show that there is other work that plaintiff can perform. Regarding this burden, the Second Circuit has instructed:

> Generally speaking, if a claimant suffers only from exertional impairments, e.g., strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable grids. For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled." Where significant nonexertional impairments are present at the fifth step in the disability analysis, however, application of the grids is inappropriate. Instead, the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.

*Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999) (internal quotations and citations omitted).

Plaintiff claims that in addition to her back condition, her hypothyroidism, diabetes, gastroesophageal reflux disease and peptic ulcer, numbness in her arms and hands, arthralgia with pain in her knees and hips, dizziness, headaches, and depression significantly erode her ability to work. Thus, she argues, the ALJ improperly relied on the grids to sustain her burden of demonstrating that there are jobs plaintiff can perform. As discussed, however, the record does not support a finding that any of these impairments, alone or together, significantly limits her ability to work; or that her complaints of pain and other symptoms are credible. Further, regarding her depression, Magistrate Judge Peebles concluded the ALJ properly found that plaintiff's mental disorder did not impose significant limitations on her ability to engage in substantial gainful activity. Plaintiff conclusorily objected to this aspect of the Report-Recommendation, which thoroughly addressed the ALJ's evaluation of plaintiff's mental condition and its impact on her ability to work. Indeed, the Court, having reviewed the ALJ's decision finds no legal or factual error in this regard. Accordingly, the Court finds that there is

substantial evidence in the record to support the ALJ's conclusion that plaintiff does not have significant nonexertional limitations.  The ALJ, therefore, did not err in relying on the grids at the fifth step to find that there were a significant number of jobs in the national economy that plaintiff could perform despite her functional limitations.  Accordingly, plaintiff's objection is without merit.

## IV. CONCLUSION

For the above stated reasons, it is

**ORDERED** that the Report-Recommendation and Order of Magistrate Judge Peebles is **ADOPTED in its entirety**; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: March 21, 2006
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge